UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RACHEL ALINTOFF, individually, and as legal parent for the minor child H.A., <br><br> Plaintiff, <br><br> v. <br><br> STATE OF NEW JERSEY, *et al.*, <br><br> Defendants. | Case No. 23–cv–02671–ESK–MJS <br><br> OPINION AND ORDER |

    **THIS MATTER** having come before the Court on unopposed (*see* ECF No. 49) motions to dismiss (Motions) (ECF Nos. 38, 44) the amended complaint (ECF No. 31 (Am. Compl.)); and the Court finding:

    1.  This action, which plaintiff commenced on August 1, 2022 in the Eastern District of New York, arises from ongoing family court proceedings in the Superior Court of New Jersey (State Court). (ECF No. 1.) On February 23, 2023, this action was transferred to this District. (Docket entry after ECF No. 20.) Plaintiff, on behalf of herself and H.A., filed an amended complaint on November 1, 2023, raising the following claims: (1) count one, violations of Titles II and II of the Americans with Disabilities Act (ADA); (2) count two, violations of Section 504 of the Rehabilitation Act (RA); (3) count three, declaratory relief; (4) count four, injunctive relief pursuant to 42 U.S.C. §1983; (5) count five, monetary relief pursuant to 42 U.S.C. §1983; (6) count six, violations of the New Jersey Civil Rights Act; (7) count seven, malicious use of process; and (8) count eight, civil conspiracy. (S*ee generally* Am. Compl.) These claims are brought against defendants: (1) State of New Jersey (State); (2) Administrative Office of the Courts (AO); (3) Department of Children and Families (DCF); (4) Division of Child Protection and Permanency (DCP&P); (5) Monmouth County Prosecutor's Office; (6) Carmen Diaz-Petti, in her official capacity as Director of DCP&P and Assistant Commissioner of DCF; (7) Christine Norbut Beyer, in her official capacity as Commissioner of DCF; (8) Tara McClelland, in her individual capacity as a DCP&P caseworker; (9) Glenn A. Grant, in his official capacity as Acting Administrative Director of the Courts of the State; (10) David Tang, in his official capacity as the Chief of the Family Practice Division within the Administrative Director of the Courts of the State;

(11) Judge Angela White Dalton, in her official capacity; (12) Judge Madeline F. Einbinder, in her official capacity; (13) Judge Francis R. Hodgson, Jr., in his official capacity; (14) Judge Kathleen Sheedy, in her official capacity; (15) Lori Linskey, in her official capacity as Acting Prosecutor for the County of Monmouth; (16) Thomas Fichter, in his official capacity as Assistant Prosecutor for the County of Monmouth; (17) Eric Singer, in his official capacity as detective for the County of Monmouth; (18) Bryan Steven Alintoff, in his individual capacity, as plaintiff's legal husband and biological father of H.A; (19) William C. Miller, in his individual and official capacity as Alintoff's attorney; (20) Steven Molyneux; in his individual and official capacity as Operations Division Manager of the State Court; and (21) Lisa Joyce, in her individual and official capacity as disability coordinator for the State Court. (Am. Compl. ¶¶4–23.)[1]

2.   Plaintiff alleges that her post-traumatic stress disorder (PTSD) was exacerbated because Alintoff and several state officials, judges, and agencies substantially limited her ability to communicate with the State Court. (*Id.* ¶¶41, 42.) Rather than receiving accommodations for her PTSD, plaintiff asserts that defendants used her disability against her, interfered with her rights, and retaliated against her for her public advocacy. (*Id.* ¶¶44, 54.) For example, defendants allegedly failed to provide her with recordings and transcripts of court proceedings, enforce her custody and protection orders, and properly investigate Alintoff for abuse. (*Id.* ¶¶58, 59, 75, 77, 83–89.) Defendants also allegedly "enjoined H.A. from receiving … medical treatment and education accommodations" for his autism and attention deficit hyperactivity disorder. (*Id.* ¶¶36, 51, 52.)

3.   In April 2024, defendants filed the Motions. (ECF Nos. 38, 44.)[2] Defendants argue pursuant to Federal Rules of Civil Procedure (Rules) 12(b)(1) and 12(b)(6) that while the State, including its entities and officers, are entitled to immunity, the claims against the other defendants must be dismissed for failure to state a claim. (*See generally* ECF No. 38–1 (Mov. Br.).) Despite plaintiff having been granted an extension to oppose the Motions (docket entry after ECF No. 47), no opposition was filed (*see* ECF No. 49). After the deadline

---

[1] While the amended complaint broadly references "defendants" in each claim, the Court interprets each claim to only be brought against the select group of defendants listed in the "wherefore" paragraphs of each count.

[2] On April 23, 2024, Alintoff filed a motion to dismiss (ECF No. 44), through which he requested to join the motion to dismiss collectively filed on April 4, 2024 by all of the other defendants (ECF No. 38). Alintoff raises no independent arguments. (*See* ECF No. 44.)

to oppose the Motions passed, plaintiff requested another extension. (ECF No. 48.) I denied the request and deemed the Motions unopposed. (ECF No. 49.) Pending plaintiff's appeal to the Third Circuit Court of Appeals, I administratively terminated the Motions in June 2024. (ECF No. 52.) The Motions were reactivated in December 2024. (ECF No. 58).

4. Prior to the filing of a responsive pleading, a defendant may move to dismiss a complaint for lack of subject matter jurisdiction for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(1), (6). To survive dismissal under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed.R.Civ.P. 8(a)(2)). Courts shall accept the plaintiff's factual assertions, which "'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 342 (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts further evaluate the sufficiency of a complaint by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

5. A motion to dismiss pursuant to Rule 12(b)(1) may attack subject matter jurisdiction facially or factually. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A factual attack challenges the allegations supporting the assertion of jurisdiction, which permits a court to weigh evidence outside of the pleadings and places the burden of proof on the plaintiff to demonstrate that jurisdiction exists. *Id.* A facial attack does not dispute the facts as alleged and essentially applies the Rule 12(b)(6) standard. *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 221 (D.N.J. 2022).

6. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted the Eleventh Amendment as affirming "the fundamental principle of sovereign immunity" as a limit on a federal court's judicial authority. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). A federal court generally does not have jurisdiction over suits against "a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought, unless Congress specifically abrogates the state's immunity or the state waives its own

immunity." *Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007). In other words, with very limited exceptions, the Eleventh Amendment bars all private suits against non-consenting states, including arms of the states, in federal court. *Lombardo v. Pa., Dep't of Pub. Welfare*, 540 F.3d 190, 194 (3d Cir. 2008). Arms of the state entitled to Eleventh Amendment immunity "include state courts, its employees, and the judges." *Dongon v. Banar*, 363 F. App'x. 153, 156 (3d Cir. 2010). Entities like the DCP&P, DCF, and AO "can [also] cloak [themselves and their employees] in the state's sovereign immunity under the Eleventh Amendment." *Johnson v. State of N.J.*, 869 F. Supp. 289, 298 (D.N.J. 1994); *Wilson v. New Jersey Div. of Child Protec. and Permanency*, No. 13–03346, 2019 WL 13260178, at *16 (D.N.J. Aug. 23, 2019). Similarly, county prosecutors and detectives engaged in classic law enforcement and investigative functions are entitled to sovereign immunity. *Taylor v. City of Jersey City*, No. 22–00457, 2023 WL 6997250, at *4 (D.N.J. Oct. 24, 2023).

7. "It is [also] a well-settled principle of law that judges are generally 'immune from a suit for money damages'" for actions taken in their official capacity. *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000) (quoting *Mireles v. Waco*, 502 U.S. 9, 9 (1991)). Absolute judicial immunity also extends to non-judicial officers for claims relating to the exercise of judicial functions. *Savadjian v. Caride*, No. 18–16381, 2019 WL 6975102, at *2 (D.N.J. Dec. 20, 2019). Such immunity applies even if the "exercise of authority is flawed by the commission of grave procedural errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978). Here, plaintiff's claims against Judge Sheedy, Judge Einbinder, Judge Dalton, and Judge Hodgson are premised upon her dissatisfaction with their rulings and accommodations, or lack thereof. (*See generally* Am. Compl.) Similarly, plaintiff's scant factual allegations against Grant, Tang, Molyneux, and Joyce involve their responses to her requests for accommodations. (*See generally id.*) To the extent these defendants are named in this action in their official capacity, they are protected by absolute immunity. *See Wolf v. New Jersey*, No. 19–16979, 2023 WL 2367991, at *4–6 (D.N.J. Mar. 6, 2023), *aff'd*, No. 23–1635, 2024 WL 5154023 (3d Cir. Dec. 18, 2024).

8. In count one, plaintiff asserts that the following defendants violated her and H.A.'s rights under Title II and Title III of the ADA: (1) State; (2) AO; (3) DCF; (4) DCP&P; (5) Monmouth County Prosecutor's Office; (6) Grant; (7) McClelland; (8) Alintoff; (9) Molyneux; (10) Joyce; and (11) Judge Hodgson (Am. Compl. ¶¶241–267.) "Title III … governs twelve specifically enumerated categories of 'public accommodations,'" none of which include courthouses or the state court system." *Wolf*, 2023 WL 2367991, at *6; 42 U.S.C. §12181(7) (defining "public accommodation" to include, *inter alia*, restaurants, bars, movie theaters, auditoriums, laundromats, zoos, daycare

4

centers, and gymnasiums). Indeed, "[s]tate courthouses and the state court system, more generally, are by definition, excluded as places of 'public accommodations' under Title III." *Wolf*, 2023 WL 2367991, at *6. Given that plaintiff's ADA claims are based upon defendants' conduct limiting her equal access to court proceedings, programs, and activities (Am. Compl. ¶¶243–267), the Title III aspect of count one will be dismissed. *See Wolf*, 2024 WL 5154023, at *1 (affirming dismissal of the plaintiff's Title III claims because "[s]tate courts are not places of public accommodation").

9. As to the Title II aspect of count one, plaintiff "must demonstrate that: (1) [s]he is a qualified individual with a disability; (2) [s]he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of h[er] disability." *Heffley v. Steele*, 826 F. App'x 227, 232 (3d Cir. 2020). Of note, "defendants who are not public entities or who are not sued in their official capacities cannot be liable for Title II violations." *Wolf*, 2023 WL 2367991, at *7 (quoting *Wilson v. New Jersey Div. of Child Protec. and Permanency*, No. 13–03346, 2019 WL 13260178, at *20 (D.N.J. Aug. 23, 2019)). Thus, to the extent this claim is brought against McClelland, Alintoff, Molyneux, and Joyce in their individual capacities, this claim will be dismissed. *See Wilson*, 2019 WL 13260178, at *15 (noting that "individual capacity defendants are not subject to suit under Title II of the ADA). Furthermore, "ADA lawsuits against state entities are barred by sovereign immunity except where a plaintiff successfully alleges constitutional violations arising from the same conduct." *Durham v. New Jersey Dep't of Corr.*, No. 22–05482, 2025 WL 642469, at *5 (D.N.J. Feb. 26, 2025).

10. While plaintiff fails to state a claim for any constitutional violation and the official capacity defendants named in this count are immune from Title II claims, I will still assess the merits of this claim. *See infra* ¶13. No dispute exists that plaintiff suffers from PTSD. (*see* Mov. Br. pp.39–42; Am. Compl. ¶1). I, however, find that plaintiff fails to plausibly allege that she was the subject of discrimination or that the said discrimination was by reason of her disability. Plaintiff bases her claims off the conclusory allegations that defendants "refused to provide [her with] individualized treatment, auxiliary aids and services, and other accommodations and modifications necessary to ensure an equal opportunity." (Am. Compl. ¶251.) Beyond vaguely suggesting that the State Court "blocked" her from receiving accommodations, plaintiff claims that Alintoff falsely accused her of being unfit and having a mental illness and that McClelland failed to perform a proper investigation of the allegations of abuse against H.A. (*Id.* ¶¶252, 265.) No specific allegations of Title II violations are made as to the other defendants named in

this count. (*See id.* ¶¶ 241–267.) Thus, the Title II aspect of count one will also be dismissed.

    11. Count two, which raises claims under the RA, is asserted against: (1) State; (2) AO; (3) DCF; (4) Monmouth County Prosecutor's Office; (5) Molyneux; (6) Joyce; and (7) Judge Hodgson. (*Id.* ¶¶ 268–280.) Like Title II of the ADA, Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *Stone v. New Jersey Admin. Off. of the Cts.*, No. 11–03229, 2012 WL 3863958, at \*4 (D.N.J. Sept. 5, 2012) (noting that "Title II of the ADA was expressly modeled after [S]ection 504 of the RA). While "sovereign immunity does not bar suit against state entities under the RA," *Durham*, 2025 WL 642469, at \*5, I find that plaintiff fails to sufficiently plead her RA claim for the same reasons she failed to sufficiently plead her Title II claim. *See supra* ¶ 9.

    12. Count three seeks declaratory relief under 28 U.S.C. § 2201 against: (1) Diaz-Petti; (2) Beyer; (3) Grant; (4) Tang; (5) Judge Dalton; (6) Judge Sheedy; (7) Molyneux; (8) Joyce; and (9) Judge Hodgson. (Am. Compl. ¶¶ 281–284.) Premised upon purported 42 U.S.C. § 1983 violations of the First and Fourteenth Amendment, plaintiff requests that custody and visitation orders not be arbitrarily and capriciously enforced, parents not be retaliated against for their public advocacy, and that timely court hearings be scheduled with litigants having access to the full and complete record. (*Id.* p. 62.) Through this claim, plaintiff requests that this Court "constru[e] and determine[e] the constitutionality of the rules promulgates and procedure employed by [DCF], [DCP&P], and [State Court]." (*Id.* ¶ 282.) However, the "Supreme Court has made clear that such a situation is neither permissible nor desirable." *Wilson v. New Jersey Div. of Child Prot. & Permanency*, No. 13–03346, 2019 WL 13260178, at \*11 (D.N.J. Aug. 23, 2019). "Federal courts should not enter orders 'aimed at controlling or preventing the occurrence of specific events that might place in the court of future' state court proceedings." *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 500 (1974)). In other words, "a federal district court is not to appoint itself a *de factor* supervisor of state court proceedings, ... a scenario of which would inevitably ensue given the frequent interplay between the New Jersey state courts and the [DCP&P] regarding family law matters." *Id.*

    13. In count four, plaintiff seeks injunctive relief under 42 U.S.C. § 1983 against the same defendants named in count three. (Am. Compl. ¶¶ 285–296.) This count fails for the same reason as count three. *See Wilson*, 2019 WL 13260178, at \*9–12. Plaintiff seeks for an order requiring DCP&P workers

and the State Court to refrain from abuse of process and to implement procedures to guarantee due process. (Am. Compl. ¶¶ 285–296.) However, beyond questions as to whether plaintiff has standing or these defendants have immunity from this claim, this Court does not have authority to enter such orders. *See Wilson*, 2019 WL 13260178, at *9–12.

14. Count five seeks monetary damages under 42 U.S.C. § 1983 against: (1) Singer; (2) McClelland; (3) Alintoff; and (4) Miller. (Am. Compl. ¶¶ 297, 298.) "To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right." *Durham v. New Jersey Dept. of Corrections*, No. 22–05482, 2025 WL 642469, at *4 (D.N.J. Feb. 26, 2025). Alintoff and Miller are not state actors; rather they are private litigants named in this action for their adversarial roles in the pending State Court family court proceedings. *See Wolf*, 2023 WL 2367991, at *10. Thus, this claim will be dismissed as to Alintoff and Miller. As to Singer and McClelland, there is nothing in the amended complaint that suggest that they nor any of the defendants named in this action violated any of plaintiff's constitutional rights. While plaintiff makes conclusory allegations about how she was not provided proper accommodations, she provides no basis for this claim. Instead, she is improperly attempting to seek relief from the unsatisfactory rulings and outcomes the State and State Court have provided. Plaintiff's "dissatisfactions, however, is not a legally cognizable harm or injury." *Wolf*, 2023 WL 2367991, at *10. Furthermore, while plaintiff asserts that this claim is brought against Singer and McClelland in their individual capacity, plaintiff solely takes issue with conduct they performed in their official capacity as state officials. *See supra* ¶ 6. Singer and McClelland are thus immune from this claim and will also be dismissed. *See Wilson*, 2016 WL 316800, at *5.[3]

15. Upon careful review of plaintiff's allegations in the amended complaint, I find that counts one through five cannot survive. Plaintiff already had the opportunity to amend her complaint, yet her federal claims continue to fail on Rule 12(b)(1) and Rule(b)(6) grounds. (*See* ECF Nos. 26–30.) Granting further leave to correct the deficiencies noted herein would thus be futile. *New*

---

[3] Plaintiff appears to also assert within count five that Singer, McClelland, Alintoff, and Miller conspired to violate her constitutional rights. (Am. Compl. ¶ 298.) Since plaintiff fails to establish that these defendants individually violated her constitutional rights, I find that there is no basis to address the conspiracy aspect of this claim.

*York v. Hill*, 528 U.S. 110, 118 (2000); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

16. Counts six, seven, and eight are all state law claims, over which I decline to exercise supplemental jurisdiction. *See* 28 U.S.C. §1367(c)(3). "A federal court may decline to exercise supplemental jurisdiction over state law claims when it dismisses all claims over which it has original jurisdiction." *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017); *see Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 29–34, 44 (2025)(noting that because the "deletion of all federal claims deprived the [d]istrict [c]ourt of federal-question jurisdiction," once those claims were gone, "the court's supplemental jurisdiction over the state claims dissolved too"). Beyond discretion, a court "*must* decline" exercise of supplemental jurisdiction in cases in which all original jurisdiction claims have been dismissed "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Stone v. Martin*, 720 F. App'x 132, 136 (3d Cir. 2017) (emphasis in original) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)). "Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims." *McCarthy v. Equinox Holdings, Inc.*, No. 14–00037, 2015 WL 540218, at *4 (D.N.J. Feb. 9, 2015). None of these considerations warrant exercising jurisdiction over the remaining claims.

Accordingly,

**IT IS** on this   **15th** day of **July 2025**   **ORDERED** that:

1. The Motions are **GRANTED.**

2. Counts one through five are **DISMISSED with prejudice**.

3. Plaintiff may reinstate the state claims in the appropriate state court within 30 days of entry of this order unless state law provides for a longer tolling period. *See* 28 U.S.C. §1367(d).

4. The Clerk of the Court is directed to terminate the Motions at ECF Nos. 38 and 44 and to mark this action as **CLOSED.**

                                                   */s/ Edward S. Kiel*
                                                   **EDWARD S. KIEL**
                                                   **UNITED STATES DISTRICT JUDGE**